[Cite as *Alum Cliff Industries, L.L.C. v. Hickory Woods Home Owners' Assn., Inc.*, 2026-Ohio-2756.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ALUM CLIFF INDUSTRIES, LLC, ET AL., | : | CASE NO. CA2025-04-033 |
| Appellants, | : | |
| | : | OPINION AND JUDGMENT ENTRY 7/20/2026 |
| - vs - | : | |
| | : | |
| HICKORY WOODS HOME OWNERS' ASSOCIATION, INC., | : | |
| | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2023 06 1277

Strauss Troy Co., LPA, and Brian J. O'Connell and Stephen E. Schilling, for appellants.

Rapier & Bowling Co., L.P.A., and Kyle M. Rapier, for appellee.

**O P I N I O N**

**BYRNE, P.J.**

{¶ 1} Defendant/Appellant, Alum Cliff Industries, LLC, and Third-Party-Defendants/Appellants, Pankaj Vatsyayan, Mansi Narula, P&S Winner, LLC, Maria

Patricia Meja Villasmil, William Jose Jimenez Mago, Rajkumar Agarwal, Roshani Agarwal, and R&D Investment Partners, LLC, appeal from the decision of the Butler County Court of Common Pleas, General Division, which denied appellants' motion for summary judgment and instead granted the motion for summary judgment of Plaintiff/Appellee Hickory Woods Home Owners' Association, Inc. For the reasons described below, we affirm in part, reverse in part, and remand this matter for further proceedings.

## I. Factual and Procedural Background

{¶ 2}    In 1994, Stonewall Builders, Inc. ("Stonewall") recorded the "Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Hickory Woods Homeowners Association, Inc." ("the Declaration") with the Butler County, Ohio Recorder. The Declaration pertained to Hickory Woods, a planned community being developed by Stonewall in Hamilton, Ohio. At the time of the filing of the Declaration, the Hickory Woods Homeowners' Association, Inc. ("HOA"), a non-profit corporation, was formed to administer and maintain the planned community.

{¶ 3}    In the Declaration, Stonewall was identified as the "Declarant." Section 13 of the Declaration addressed development rights at Hickory Woods, stating:

> **13.1 Submission of Additional Land.** The Declarant reserves the rights to submit all or any portion of the Additional Land to the terms of this Declaration at any time during the Development Period. The submission shall be accomplished by the filing of a Supplemental Declaration identifying the Additional Land, the Lots and the Common Elements.

{¶ 4}    The term "Development Period" is a defined term and means: "the period commencing on the date of recording of this Declaration and ending on the date seven (7) years thereafter within which the Declarant has the right to submit Additional Land to the terms of this Declaration." Declaration at Section 1.13.

- 2 -

{¶ 5} Section 15 of the Declaration addresses, among other things, amendments to the Declaration. Section 15.2 states:

> **Amendment.** Except as provided in this Section 15.2 prior to the end of the Development Period, any provision of this Declaration may be amended in whole or in part by a recorded instrument executed by Declarant and approved by the Owners of at least 75% of all Lots.
>
> Except as provided in this Section 15.2 after the end of the Development Period, any provision of this Declaration may be amended in whole or in part by a recorded instrument approved by the Owners of at least seventy-five (75%) percent of all Lots.
>
> All Amendments shall be executed by the Declarant, and any Builder, if required, and shall be executed by the President and Secretary of the Association. Such Amendment shall certify that the proper notices were sent and that the requisite vote was obtained. Amendments need not be signed by the Owners.

{¶ 6} Following the execution of the Declaration, Stonewall and/or the HOA executed and recorded several "supplements" adding additional lands to Hickory Woods, as well as several amendments to the Declaration.

{¶ 7} In 2012, the HOA, through its President and Secretary, executed and recorded the Third Amendment to the Declaration. The specific language of the Third Amendment is not at issue in this case, and need not be included in this opinion. But the Third Amendment's essential purpose was to preclude homes in Hickory Woods from being used as rental properties.

{¶ 8} In 2020, Alum Cliff Industries, LLC ("Alum Cliff"), a home builder, executed and recorded a plat map dedicating "Block D" of the Hickory Woods Subdivision. The plat map included a "Homeowners Association Note" which stated,

> ALL LOTS SHOWN ON THE ACCOMPANYING PLAT SHALL BE SUBJECT TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATIONS OF THE EASEMENTS FOR HICKORY

HOMEOWNERS ASSOCIATIONS, INC. AS SET FORTH IN THE OFFICIAL RECORDS VOLUME 5206, PAGE 653, OF THE BUTLER COUNTY, OHIO RECORDS, WHICH COVENANTS AND PROVISIONS ARE HEREBY MADE A PART OF THE DEED OF SUBDIVISION AS IF FULLY REWRITTEN HEREIN.

{¶ 9} Alum Cliff served as the home builder for six lots in Block D: lots 32302, 32303, 32304, 32305, 32306, and 32307 ("the six lots"). Block D and the six lots were not referred to in the Third Amendment because Block D was not platted in 2012 when the HOA executed the Third Amendment.

{¶ 10} At some point, a controversy arose between the HOA on one side and Alum Cliff and the individual owners of the six lots on the other side.[1] The record is not clear how the dispute arose or as to many of the background facts, but it appears that the owners of the six lots purchased their respective homes with the intention of using them as short-term rentals made available to renters through services such as AirBnB. The HOA sought to prevent them from making these homes available to renters.

{¶ 11} The parties were apparently unable to resolve the dispute privately, and Alum Cliff filed its complaint against the HOA. Alum Cliff sought declaratory relief and asked the court to find that the Third Amendment was not binding on the six lots. Alum Cliff also sought an order enjoining the HOA from imposing any fines, penalties, or other consequences due to the homes on the six lots being used as rentals.

{¶ 12} The HOA answered and asserted counterclaims against Alum Cliff for declaratory judgment, an injunction, a money judgment, and attorney fees. The HOA also filed a third-party complaint asserting the same causes of action against the individual owners of the six lots (listed in ¶ 1 above), making them third-party defendants.

---

1. At the time of the filing of the complaint, Alum Cliff was also an owner of one of the six lots. The record indicates that after the filing of the complaint, Alum Cliff sold this final lot.

{¶ 13} The HOA moved for summary judgment. The HOA did not submit any summary judgment evidentiary materials in support of its motion but instead referred to exhibits attached to Alum Cliff's complaint and the HOA's own counterclaim. The HOA argued that the Third Amendment to the Declaration was valid and enforceable against the lot owners.

{¶ 14} Alum Cliff and the lots owners subsequently filed their own combined motion for summary judgment against the HOA. (Though the lot owners joined the combined motion, we will refer to the combined motion as "Alum Cliff's motion for summary judgment.") Alum Cliff argued that the six lots were not subject to the Third Amendment for various reasons, including that the six lots were never properly made subject to the Declaration by the "supplement" process stated in the Declaration, that the Third Amendment was never properly executed as required by the Declaration, and that the Third Amendment failed to identify or refer to the six lots.

{¶ 15} A magistrate issued a written decision addressing both motions. The decision recommended granting the HOA's motion for summary judgment and denying Alum Cliff's motion for summary judgment. The magistrate found that the six lots were subject to the Third Amendment based on the Block D plat prepared and recoded by Alum Cliff, which specifically stated that the lots shown on the plat map were subject to the Declaration. The magistrate found that the HOA was entitled to the injunctive relief it requested and Alum Cliff and the lots owners were required to comply with the Third Amendment.

{¶ 16} The magistrate's decision did not address the arguments raised by Alum Cliff regarding the alleged failure to comply with the Declaration's requirements in supplementing new land and amending the Declaration.

{¶ 17} Alum Cliff and the lot owners objected to the magistrate's decision. Alum Cliff again argued that the Third Amendment was never validly executed, that the Block D lots were never properly made part of the HOA as set forth in the Declaration's supplement procedure, and that the Third Amendment failed to refer to the Block D lots.

{¶ 18} The trial court overruled Alum Cliff's objections. The court found that the Declaration's language expressly included "any amendments" to the Declaration, which necessarily included the Third Amendment. The court did not address Alum Cliff's specific argument concerning the alleged defective execution of the Third Amendment but impliedly found that the Third Amendment had been properly executed.

{¶ 19} The trial court also noted that the Third Amendment could not have referred to the six Block D lots because they had not been platted when the Third Amendment was executed. The court found that the plat map of Block D noted that the six lots were subject to the Declaration. Therefore, the court found that Alum Cliff and the individual lot owners had constructive notice of the Third Amendment and therefore would have been aware of the rental restriction. The court overruled Alum Cliff's objections and adopted the magistrate's decision.

{¶ 20} Alum Cliff and the third-party defendant/lot owners[2] have appealed, raising only one assignment of error.

## II. Law and Analysis

{¶ 21} Alum Cliff's sole assignment of error states:

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST THE LOT OWNERS BECAUSE IT FAILED TO STRICTLY CONSTRUE THE DECLARATION AND THE THIRD AMENDMENT IN THE LOT OWNERS' FAVOR.

2. For ease of reading, and since the Alum Cliff and individual lot owners have appealed together, we will at time refers only to Alum Cliff when describing the appellants' various arguments.

{¶ 22} Alum Cliff presents three issues for review in support of its assignment of error. First, Alum Cliff argues that the lot owners never had constructive notice of the Third Amendment because the six lots were never properly added to the planned community by the procedure set forth in the Declaration. Second, Alum Cliff argues that the Third Amendment was not properly executed by the HOA. Third, Alum Cliff argues that the six lots are not subject to the Third Amendment for various reasons, including that the HOA, in summary judgment proceedings, never established chain-of-title between the six lots and the Third Amendment. For ease of analysis, we will address the issues raised by Alum Cliff out of the order presented in its brief.

**A. Summary Judgment Standard**

{¶ 23} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.).

{¶ 24} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "'An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.'" *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 10 (12th Dist.), quoting *Abbuhl v. Orange Village*, 2003-Ohio-4662, ¶ 14 (8th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III,*

*L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 25} "The moving party bears the initial burden of informing the court of the basis for the motion [for summary judgment] and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, L.L.C.*, 2023-Ohio-116, ¶ 18 (12th Dist.). To satisfy this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Adkins v. Middletown*, 2025-Ohio-317, ¶ 60 (12th Dist.). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve." *Sullivan v. Mercy Health*, 2022-Ohio-4445, ¶ 21 (12th Dist.). The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.), citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

{¶ 26} "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, L.L.C. v. McKay*, 2021-Ohio-2156, ¶ 26 (12th Dist.). De novo means that this court uses the same standard that the trial court should have used. *Brock v. Servpro*, 2022-Ohio-158, ¶ 29 (12th Dist.). Therefore, when conducting a de novo

review, this court independently reviews the trial court's decision without giving it any deference. Baker at ¶ 9.

## B. Whether the Third Amendment Was Properly Executed

{¶ 27} Alum Cliff argues that the trial court erred in concluding that the Third Amendment was validly executed under the terms of the Declaration.

{¶ 28} As a reminder, Section 15.2 of the Declaration states as follow:

> **15.2 Amendment.** Except as provided in this Section 15.2 prior to the end of the Development Period, any provision of this Declaration may be amended in whole or in part by a recorded instrument executed by Declarant and approved by the Owners of at least 75% of all Lots.
>
> Except as provided in this Section 15.2 after the end of the Development Period, any provision of this Declaration may be amended in whole or in part by a recorded instrument approved by the Owners of at least seventy-five (75%) percent of all Lots.
>
> All Amendments shall be executed by the Declarant, and any Builder, if required, and shall be executed by the President and Secretary of the Association. Such Amendment shall certify that the proper notices were sent and that the requisite vote was obtained. Amendments need not be signed by the Owners.

{¶ 29} Alum Cliff hinges its argument on the following phrase in the first sentence of the third paragraph: "All Amendments shall be executed by the Declarant . . ." Alum Cliff argues that this phrase means that the Declarant (that is, Stonewall), was required to execute *any* amendment to the Declaration for it to be valid regardless of whether the amendment occurred during or after the Development Period. Because the Third Amendment was executed only by representatives of the HOA, and not by Stonewall, Alum Cliff argues that the Third Amendment was never validly enacted and is effectively null and void.

{¶ 30} We disagree with Alum Cliff's interpretation of Section 15.2. As with any contract, our analysis is guided by the text of Section 15.2. *Harder Invests., L.L.C. v. Perin-Tyler Family Found., L.L.C.*, 2025-Ohio-4706, ¶ 21 (12th Dist.). That language sets forth two different methods of executing an amendment, one of which requires the Declarant's participation, and one which does not.

{¶ 31} The first paragraph of Section 15.2 establishes the "baseline" requirements for executing an amendment to the Declaration *during* the Development Period. During that time, any amendment must be executed in a recorded instrument by the Declarant and approved by 75 percent of all lot owners.

{¶ 32} The second paragraph of Section 15.2 establishes the "baseline" requirements for executing an amendment *after* the Development Period. In such a case, an amendment must be approved by 75 percent of the lot owners. The second paragraph includes no requirement that the Declarant execute an amendment after the Development Period.

{¶ 33} The third paragraph of Section 15.2 modifies both the first and second paragraphs. It establishes additional persons who must execute the amendments referenced in the previous two paragraphs. It begins by stating that all amendments must be executed by the Declarant, and any "Builder,"[3] but immediately follows this statement with the phrase "if required."

{¶ 34} Reviewing the three paragraphs holistically, the "if required" phrase must be a reference to the requirement of execution by the Declarant in the first paragraph and the lack of a requirement of execution by the Declarant in the second paragraph. Thus,

---

3. "Builder" is a defined term in the Declaration and means "any person or entity (including the Declarant) who acquires a Lot for the purpose of improving that Lot and erecting a Dwelling Unit thereon for resale to an Owner." Declaration, Section 1.6.

the first sentence of the third paragraph means that the Declarant's execution is only "required" if an amendment is made during the Development Period, i.e., under the first paragraph.

{¶ 35} The remainder of the third paragraph—which, again, modifies both previous paragraphs—provides that any amendment requires: (1) execution by both the President and Secretary of the HOA and (2) certification that notices were sent and the necessary 75% vote of owners was obtained.

{¶ 36} Altogether, the three paragraphs of Section 15.2 establish the requirements for executing an amendment to the Declaration either during or after the Development Period. If an amendment is executed *during* the Development Period, it must be approved by 75% of the lot owners and must be executed by the Declarant, President, and Secretary of the HOA. If, however, an amendment is made *after* the Development Period, it must be approved by 75% of the lot owners and must be executed by the President and Secretary of the HOA, but need not be executed by the Declarant.

{¶ 37} This interpretation also makes sense in context of the entire Declaration document. Presumably, after the Development Period has ended, the Declarant would no longer actively be building or adding property to Hickory Woods. And the Declarant would therefore no longer be involved in the day-to-day operations of Hickory Woods or have any interest in any subsequent modifications to the Declaration approved by the lot owners. Other sections of the Declaration support this interpretation; those sections generally address how the governance of the HOA will change after the Development Period has ended and the Declarant has transferred some or all of its rights back to the lot owners. *See, e.g.*, Section 14.3.3 ("Transition from Declarant Control.")

**{¶ 38}** The HOA executed the Third Amendment in 2012, well after the Development Period expired in 2001 as set forth in the Declaration.[4] Therefore, pursuant to the terms of Section 15.2, the Third Amendment need only have been executed by the President and Secretary of the HOA, and must have certified that notices were sent to the lot owners and the necessary 75% approval obtained. The Third Amendment complied with all these requirements. As such, Alum Cliff's argument that the Third Amendment was never validly executed lacks merit.

### C. Chain-of-Title and Constructive Notice

**{¶ 39}** We now turn to the remaining questions of whether the HOA established, as a matter of law, that the lot owners had constructive notice of the Third Amendment and that there was chain of title between the Third Amendment and the six lot owners. We will address the chain of title issue first.

**{¶ 40}** Finding issues regarding chain-of-title dispositive, we will address that issue exclusively. Alum Cliff argues that the trial court's conclusion that the lot owners had constructive notice of the Third Amendment is flawed because the HOA never established chain-of-title between the lot owners and the Third Amendment. Alum Cliff states that while the HOA made conclusory statements in its motion for summary judgment, it never established chain-of-title through summary judgment evidence. The HOA never responded to this argument in its appellate briefing.

**{¶ 41}** The Ohio Supreme Court has established that in order for a purchaser of real property to be charged with constructive notice of an encumbrance contained in a prior recorded instrument, the prior instrument must be recorded in the purchaser's chain-of-title. *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 336 (1984). Furthermore, a

---

4. The Development Period was reopened in 2017 pursuant to a Fourth Amendment to the Declaration. But that document did not retroactively open the Development Period back to 2001.

statute provides that unrecorded instruments are fraudulent insofar as they relate to a subsequent bona fide purchaser:

> All deeds . . . and instruments of writing properly executed for the conveyance or encumbrance of lands . . . shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

R.C. 5301.25(A).

{¶ 42} This court has previously summarized the requirements to enforce a restrictive covenant:

> In order for the restrictive covenant to be valid upon a grantee, the following elements must be established: (1) "the restrictions must be part of the general subdivision plan, applicable to all lots in the subdivision," *Maasen v. Zopff* (July 26, 1999), Warren App. Nos. CA98–10–135, CA98–10–138, and CA98–12–153, unreported, at 8, 1999 WL 552747; (2) "lot purchasers must be given adequate notice of the restriction," *id.;* (3) "the restrictions must be in accord with public policy," *id.;* (4) "the restriction cannot be implied, but must be express," *id.;* and (5) "*the restrictions must run with the land, and therefore must be inserted in the form of covenants in the owner's chain of title. Otherwise, subsequent purchasers are not bound*" (emphasis added), *id.* at 8–9, citing *Davidson v. Buckeye Homes, Inc.* (C.P.1942), 37 Ohio Law Abs. 570. Thus, privity of estate between the original grantor and subsequent grantees is generally required to enforce a restrictive covenant. See *LuMac Dev. Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 562, 573 N.E.2d 681, 683–684.

(Emphasis in original.) *Peters v. Nelson*, 134 Ohio App.3d 224, 227 (12th Dist.1999).

{¶ 43} To meet its burden of demonstrating chain-of-title between the lot owners and the encumbrance stated in the Third Amendment, and to allow the trial court to find that the lot owners had constructive notice of the Third Amendment, it was necessary for

the HOA to submit summary judgment evidence of privity between the lot owners' recorded deeds and the encumbrance stated in the Third Amendment. *Peters* at 227.

{¶ 44} We have reviewed the record and have not found summary judgment evidence establishing chain-of-title between the lot owners' individual deeds and the Third Amendment. Specifically, our review of the record reveals that none of the lot owners' deeds were ever submitted to the trial court. In its third-party complaint, the HOA did reference the lot owners' deeds and referenced them by book and page number. However, the HOA did not attach copies of those deeds by which either the trial court or this court could verify that the deeds refer back to the Declaration.

{¶ 45} The only document in the record potentially establishing chain-of-title between the lot owners and the Third Amendment was the 2020 plat map of Block D stating that all lots depicted on the plat would be subject to the Declaration. The 2020 plat map also references the Declaration by book and page number. The 2020 plat map, if referenced in the lot owners' deeds, would appear to establish chain-of-title and might support a summary judgment finding that the lots were subject to the Declaration. However, the plat map alone is insufficient to demonstrate chain-of-title because there remains no evidence before this court that any of the individual deeds of the six lots referenced the plat map. In all likelihood, the deeds would contain such a reference to the plat and might also indicate that the properties deeded were subject to the Declaration. However, that information, and those documents, were simply not submitted to the trial court before or during the summary judgment proceedings.

{¶ 46} That being said, Alum Cliff caused the 2020 plat map to be filed, so there is no question that Alum Cliff at the very least had constructive notice of the Third Amendment. Section 1.2 of the Declaration states that the Declaration includes "*any amendments hereto*." Declaration, Section 1.12.  As the summary judgment record

reflects that the Third Amendment was properly executed and recorded and within the Declaration's chain-of-title, the trial court correctly found that Alum Cliff had constructive notice of the Third Amendment, and that there was no disputed issue of material fact in this respect.[5]

{¶ 47} Nonetheless, constructive notice to Alum Cliff does not establish constructive notice to the individual lot owners named in the third-party complaint. As such, the trial court's determination that the individual lot owners (other than Alum Cliff) had constructive notice of the encumbrance stated in the Third Amendment is fundamentally flawed due to a lack of evidence in the record supporting a chain-of-title determination.

{¶ 48} For the foregoing reasons, we partially sustain and partially overrule Alum Cliff's and the lot owners' first assignment of error. We affirm the trial court's award of summary judgment, declaratory judgment, and injunction with respect to Alum Cliff. We reverse the grant of summary judgment, declaratory judgment, and injunction with respect to the individual lot owners named in the third-party complaint.

{¶ 49} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

M. POWELL, J. concurs.

PIPER, J., concurs in part and dissents in part.

**PIPER, J., concurring in part and dissenting in part.**

{¶ 50} I concur with much of the majority's opinion. I must, however, disagree with the majority's conclusions supporting reversal as to the individual lot owners. The initial

---

5. The HOA, in its counterclaim, alleged that Alum Cliff was also on actual notice of the Third Amendment based on having purchased other lots from Stonewall as early as 2017, which deeds specifically refer to the Third Amendment. However, these deeds, while referenced in the counterclaim, do not appear to have been filed or included in the summary judgment record.

Declaration of Covenants, the Third Amendment to the Declaration, and the plat were recorded public documents available when examining the title, and the individual lot owners had constructive notice of the use restrictions contained in the Third Amendment.[6]

{¶ 51} Constructive notice means a person is presumed to have knowledge of a fact because the fact was publicly available or easily discoverable, regardless of whether the person had actual notice of the fact. Constructive notice is what the law regards as a substitute for actual notice. Any properly recorded instruments that encumber, restrict, affect the rights, or define the use of real property become part of a proper title examination for that property. Those instruments are revealed to the purchaser during a chain-of-title search. Depending on the circumstances, the purchaser may be deemed to have either actual or constructive knowledge of those recorded instruments. *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 315 (2d.Dist.1990); *New California Woods Homeowners Assn. v. Jakse*, 2021-Ohio-3783, ¶ 29 (3d Dist.).

{¶ 52} A buyer of real estate assumes the responsibility to exercise diligence and thoroughly examine the chain-of-title to discover any recorded filings that affect the real estate's use. *Columbia Gas* at 315*; see G/GM Real Estate Corp. v. Susse Chalet Motor Lodge of Ohio, Inc.,* 61 Ohio St.3d 375, 380 (1991). A buyer searches the chain-of-title to uncover all restrictions, encumbrances, liens, and other recorded instruments that apply to the property. *New California* at ¶ 30.

{¶ 53} A deed is a separately recorded instrument that establishes ownership upon conveyance. However, not all properly recorded instruments that are discoverable during a chain-of-title examination address a conveyance of ownership. For example, a

---

6. Ohio's Marketable Title Act (MTA) has no application herein. The purpose of the MTA was to limit title examinations to 40 years by extinguishing ancient, stagnant claims and defects from a property's title. The MTA neither defines or negates the need for a thorough and exhaustive title exam.

mortgage is a separately recorded instrument that establishes a lien interest. A reference to a mortgage in a deed may be prudent practice, but no Ohio law requires it. Said differently, a reference to an existing mortgage is not legally required for a deed's validity. A recorded mortgage is part of a title examination and provides public notice of the lien. The buyer is imputed with knowledge of the mortgage—constructive notice—even though the buyer is not a party to the loan.

{¶ 54} In the present case, the Declaration of Covenants was duly recorded. The Third Amendment to the Declaration was also properly recorded. Alum Cliff recorded the plat map, which included a notation referencing the declarations and the restrictions attached to the Hickory Woods subdivision. These documents pertain to, affect, and run with the land, and therefore are part of the chain of title. These public records, designed to give notice of the possible need for further inquiry, could not have been ignored in a thorough title exam.

{¶ 55} Alum Cliff does not argue that it was unaware of the Third Amendment to the Declaration. Instead, it argues that the amendment was neither *properly added* nor *properly executed*. Alum Cliff recorded the plat, and if it did not have actual knowledge of the Third Amendment to the Declaration, it certainly had constructive notice. The suggestion that the six lots were not specially referenced is immaterial. Therefore, I agree with the reasons expressed in our majority opinion that such arguments are without merit.

{¶ 56} However, the analysis of individual lot owners is somewhat different. The "chain-of-title" of a particular piece of property is not limited to a series of recorded owners or deeds. It also includes a series of recorded instruments that affect the property; a separately recorded mortgage interest is an example. Recorded interests, such as an HOA's restrictive use, follow the land and provide constructive notice to subsequent land purchasers.

{¶ 57} My colleagues find that the trial court needed to review the individual deeds for each owner. In this respect, and with respect, I part ways with my colleagues. Recorded deeds may be one way to discover references to covenants or use restrictions that pertain to a piece of property. But if such information were included in a deed, it would constitute actual notice, not constructive notice. I understand a person might desire actual notice, but actual notice by deed is not required. Regardless, deeds are not the only way to establish notice. I further disagree with the implicit suggestion that only deeds are examined when researching the chain-of-title. Such a suggestion is not pragmatic given the workings of the real world.

{¶ 58} There was unrebutted evidence that the individual lot owners had constructive notice, as shown by the exhibits attached to the complaint and counterclaim. The trial court's summary judgment was correct and I would affirm the trial court's decision. Therefore, for the reasons outlined above, and as it pertains to the majority's decision in this case, I concur in part and dissent in part.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to the summary judgment, declaratory judgment, and injunction granted to Hickory Woods Home Owners' Association, Inc. with respect to the individual lot owners named as defendants in the third-party complaint, and remanded for further proceedings according to law and consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to Alum Cliff Industries, LLC and 50% to Hickory Woods Home Owners' Association, Inc.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Mike Powell, Judge*